Frank J. Pino, J.
In this application petitioner seeks a judgment, pursuant to article 78 CPLR, directing respondents to approve, authorize and confer upon him, nunc pro tunc as of June 9, 1965, the degree of Bachelor of Arts, and to issue and deliver to bim a diploma evidencing such degree.
Petitioner attended Brooklyn College, a part of the City University of the City of New York, after having been duly qualified and accepted as a full-time student in a course of studies leading to a baccalaureate degree of Bachelor of Arts, from September, 1960 through the Summer of 1963.
The requirements for the degree in question, set forth in the applicable Brooklyn College Bulletin, are 128 credits, consisting of a minimum of 56 credits in courses prescribed for all students ; 36 credits in the so-called functional major, being elective subjects within the student’s field of concentration; and the balance in credits entitled “ free electives.”
In addition to the traditional four-year course leading to this degree, and pursuant to a 1951 resolution of the faculty council, as provided in a three-page mimeographed bulletin issued by the office of pre-law counselling, entitled “ Information for PreLaw Students,” the college offered a so-called professional option plan. This plan provides that a student who lacks not more than 32 credits in free electives, and who has, in addition, completed one year’s work, full time, in an approved law school, is “ eligible ” for the degree “ provided that the courses offered in fulfillment of the requirements for the degree, including courses completed in the law school, constitute, in the opinion of the Dean of Faculty, an acceptable program for the AB degree. ’ ’
Petitioner alleges that in the Fall of 1961 and again in the Fall of 1962, he discussed his plan to enter a law school and the availability to him of the professional option plan, with Professor G-eorgia Wilson, a pre-law advisor at Brooklyn College, and that he was advised the professional option plan was available to him.
That at the end of the Spring session of 1963, after having satisfactorily completed all required courses up to that point, and preparatory to entering Syracuse Law School, petitioner consulted with a Mr. Brent at the office of counseling and guidance relative to meeting the requirements of the professional option plan and, in connection therewith, the taking of four psychology courses which petitioner lacked in order to complete 36 credits in his functional major. He was thereafter referred *726 by Mr. Brent to Dr. Evelyn Baskin, head of the department of psychology, to discuss the question of whether he might be permitted to take the courses at another institution. Dr. Baskin advised petitioner that the courses would have to be taken at Brooklyn College. In accordance with her suggestion, in the Summer of 1963, the petitioner took two of the courses and passed them. Thereafter, he consulted with Dr. Baskin on two separate occasions as to the taking of the two remaining courses in question, Psychology 62 and Psychology 76. In each instance Dr. Baskin advised petitioner that each of the courses could be taken and credit given without attending classes, subject to the approval of the professors who were giving the courses. The petitioner obtained approval of both Professor Carl B. Zuckerman and Dr. Melvin Kornreich who taught Psychology 62 and 76, respectively. He duly registered for the courses, arranged with the professors for the reading of the necessary material and, after taking the examination required by each of them, passed each of the courses with a “ B.” Whereupon, proper credit (3 credits for each course) was noted upon petitioner’s official record.
That in May, 1965, after having satisfactorily completed two years of law courses at Syracuse University, which courses were subsequently, in writing, accepted as meeting the free elective credit requirements toward the degree under the professional optional plan, petitioner received a notice that June 9, 1965 was commencement day at Brooklyn College and to report there on that day. He was also advised as to where to obtain his cap and gown; he was required to and did undergo a pregraduation physical examination, and was sent tickets for the graduation exercises. In anticipation of receiving his degree, he also applied for a position with the City of New York open only to persons holding college degrees. He took a test, passed and was offered the position as soon as he would receive his degree.
That on June 9, 1965, in cap and gown, he attended the graduation exercises with his parents, his grandmother, a brother and friends. In vain he and they scanned the list of graduates in the commencement program. His name was not there. Some time later he learned that this was not a typographical error but that he had been denied his B.A. degree because he had not taken the two psychology courses, 62 and 76, “in attendance.” His administrative appeals were exhausted without success.
All this, the respondents ’ answer does not deny.
They deny, however, that anyone specifically promised petitioner that by taking the courses in question he would receive credit toward his degree under the professional option plan. *727 The two professors, by letter, not under oath, perfunctorily deny ever discussing degree requirements with petitioner; and Dr. Raskin, in the same manner, denies discussing requirements of the ‘ ‘ Professional Option ’ ’ with petitioner; in fact, claiming that at that time she was unfamiliar with such requirements. No denials are made either by Professor Wilson or Mr. Brent.
By way of affirmative defense, respondents contend that petitioner’s taking of the courses in question without being in attendance while seeking to obtain a degree under the professional option plan, all without permission of the dean of the faculty or of anyone in authority, was violative of certain provisions of the Brooklyn College bulletin and of a certain Schedule A, Brooklyn College Schedule of Classes. Respondents further contend that the petitioner failed to meet the requirements of the resolution of January, 1951, referred to earlier herein, in which the faculty council offered the professional option plan. 0
Respondents ’ affirmative defense is supported by the affidavit of the president of Brooklyn College in which he states that since the professional option plan “is a departure from the traditional requirements for a Baccalaureate Degree, the student must adhere strictly to the requirements and standards set by the Dean. Rules applicable to the prescribed courses, and in residence requirements are strictly enforced.” The president further states, in substance, that all of the 18 credits in advanced elective courses (part of the functional major, which in petitioner’s case included Psychology 62 and 76) should have been completed in residence at Brooklyn College to comply with the regulations concerning the professional option plan. He further states that the regulations for the traditional four-year course required that the work of the senior year must be completed in residence, as this regulation enables the faculty to observe the student, to evaluate his classroom performance and to determine whether or not he merits a degree. The president further avers that it is the policy of Brooklyn College not to grant degree credit for courses taken without attendance in classes; that the professors do not have any authority to determine a student’s eligibility for a degree under the professional option plan; and that this authority is reserved to the dean of the faculty.
The crucial question in this case is whether the dean of the faculty has, under the circumstances, properly exercised his opinion that the courses offered by petitioner in fulfillment of the degree do not constitute an acceptable program for the A.B. degree; the basis of the inacceptability of the program resting *728 solely upon the manner in which the two courses in question were taken by petitioner, namely, that petitioner was not in attendance.
The college bulletin referred to in the affirmative defense is the one in effect for 1966-1968. The provision relied upon relates to the candidates in their senior year and requires them to complete the work ‘ in attendance.’ This provision is not contained in the earlier bulletin, which is applicable here, and furthermore, if it were, obviously would not apply to a candidate under the professional option plan since he could not possibly be in attendance at Brooklyn College in the senior year and at the same time be in attendance at the law school.
The court must also reject as inapplicable the provisions of Schedule A, Brooklyn College Schedule of Classes, since the effective date thereof is “ Spring 1966 ” and there is no statement that these provisions, even if relevant, were in effect prior thereto and at the time petitioner enrolled for the two courses involved. <■
Two other provisions of the college bulletin relied upon by respondents do appear in the applicable bulletin. One states, substantially, that the students are expected to be familiar with the requirements for graduation as contained in official college bulletins; the other reads, in effect, that all requests about matters of standing in courses should be addressed to the dean of the faculty.
In his reply affidavit petitioner states that he first applied for assistance at the office of the dean of the faculty and was there referred to Mr. Brent of the office of guidance and counseling. The court has no reason to doubt petitioner in this regard, as what he says occurred would appear to be standard procedure in an academic institution with more than 10,000 students.
The school bulletins are silent as to general or particular “ in attendance ’ ’ requirements or regulations under the professional option plan; nor is there any provision or regulation in any bulletin issued by the college which requires attendance in class for credit relative to any electives constituting the functional major. It further does not appear anywhere that special permission of the dean of faculty or anyone else is required prior to the taking of courses, to qualify for a degree under the professional option plan.
If, in fact, as the president of Brooklyn College seems to indicate, there existed at the time petitioner enrolled, a policy in Brooklyn College not to grant degree credit for courses taken without attendance in classes, this policy was apparently unknown to the head of the psychology department and two of its professors, who should have known of such policy and who *729 should have advised petitioner thereof. The existence of such a policy is moreover contradicted by two provisions contained in the applicable Brooklyn College bulletin, both of which provide for credit toward the degree, without attendance. The first provision is found under “ Scholarship Requirements and Academic Standing” and reads as follows: “Attendance — Students matriculated for the Bachelor’s or Associate in Arts degree who are above freshman standing will not be denied credit in a course solely for reasons of attendance;”. The other provision appears under the heading “ Requirements for Degrees ” subdivision “ M. Exemption Examinations Program ”; the pertinent part of which is, to quote: “ The privilege of exemption from any course except the freshman sequence courses and the physical activities courses, on the basis of independent study and special examinations, is available to all matriculated students in the College of Liberal Arts and Sciences and in the School of General Studies. A grade of A or B means that the student will receive credit for the course and the grade is counted in the scholastic index. ’ ’
The language of the resolution which establishes the professional option plan must be interpreted in the light of the mentioned regulations contained in the applicable college bulletin. The words “ acceptable program ” in the resolution would seem, moreover, to relate to the siibstcmce of the courses offered, especially when read with the memorandum of March 20, 1961 of the dean of the faculty addressed to the chairman and deputy chairman of all departments on the subject of the Professional Option. (It would appear that Dr. Raskin should have been familiar with this memorandum at the time of her meetings with petitioner.) When the resolution is so interpreted and read, any rejection based on the manner of the taking of a course might, at most, relate to courses given at other institutions, but, certainly, cannot logically and consistently apply to courses given at Brooklyn College in the manner prescribed in its bulletin.
The chairman of the department of psychology and the two professors who taught the courses in question surely had authority to determine, as they did, the appropriate manner in which the courses should be taken by petitioner, within the published regulations. Petitioner acted in obvious reliance upon the counsel and advice of members of the staff of the college administration to whom he was referred and who were authorized to give him such counsel and advice. They undoubtedly knew or should have known that he was seeking credit toward a B. A. degree while planning to attend and, later, while attending, Syracuse *730 Law School. In any event, the administration at Brooklyn College is charged with such knowledge since it forwarded his official records to Syracuse Law School in connection with his admission there; and his enrollment for the two courses in question was recorded in the official registration ledgers of the college.
Petitioner expended money, time and effort in taking the courses to satisfactory completion, without fair warning that it would later be the sense of the dean of faculty to deny him his degree solely because he was not in attendance at the said courses.
The decision of the administration of an institution of learning concerning the standing of one of its students, made within its discretion, is not reviewable and the court may not substitute its judgment for that of the authorities of the school or college. (People ex rel. O’Sullivan v. New York Law School, 68 Hun 118; Goldstein v. New York Univ., 76 App. Div. 80.)
The authority of the dean of faculty ultimately to determine the acceptability of a program for the awarding of an A.B. degree is unquestioned. This authority, however, is not absolute (People ex rel. Cecil v. Bellevue Med. School, 60 Hun 107, affd. 128 N. Y. 621). His determination must rest upon a reasonable and plausible basis (Matter of Matty’s Rest. v. New York State Liq. Auth., 21 A D 2d 818, affd. 15 N Y 2d 659).
“ The authority of an agent is not only that conferred upon him by his commission, but also as to third persons that which he is held out as possessing. The principal is often bound by the act of his agent in excess or abuse of his actual authority, but this is only true between the principal and third persons, who believing and having a right to believe that the agent was acting within and not exceeding his authority, would sustain loss if the act was not considered that of the principal.” (Walsh v. Hartford Fire Ins. Co., 73 N. Y. 5, 10.)
The dean of faculty may not escape the binding effect of the acts of his agents performed within the scope of their apparent authority, and the consequences that must equitably follow therefrom. Having given permission to take the subject courses in the manner prescribed, through his agents Brent, Baskin, Zuckerman and Kornreich, he cannot, in the circumstances, later assert that the courses should have been taken in another manner (Phillips v. West Rochaway Land Co., 226 N. Y. 507; People ex rel. McGoldrich v. Riggs, 200 Misc. 313, and authorities therein cited).
“ ‘ It is called an estoppel ’ ”, said Lord C'oke, il ‘ because a man’s own act or acceptance stoppeth or closeth up his mouth *731 to allege or plead the truth ’ (2 Coke on Littleton, 352a) ” (White v. La Due & Fitch, 303 N. Y. 122, 128).
“ An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce * * * his rights under other circumstances.” (Selzer v. Baker, 295 N. Y. 145, 149.)
The court is satisfied that in this proceeding all of the elements of an estoppel exist and that this ageless and salutary doctrine should be invoked against the administration of Brooklyn College (Phillips v. West Rockaway Land Co., supra; People ex rel. McGoldrick v. Riggs, supra).
Since there remains no reasonable basis upon which the discretion of the dean of faculty may be exercised, and petitioner has met all the requirements for his degree in accordance with the rules and regulations of Brooklyn College, the petition herein is granted in all respects (Matter of Matty’s Rest. v. New York State Liq. Auth., 21 A D 2d 818, affd. 15 N Y 2d 659, supra; People ex rel. Cecil v. Bellevue Med. School, 60 Hun 107, affd. 128 N. Y. 621, supra). Respondents are directed to approve, authorize and confer upon petitioner Errol Blank the degree of Bachelor of Arts nunc pro tunc as of June 9, 1965.