[Civ. No. 27857. First Dist., Div. One. Mar. 5, 1971.]

B. WONG, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Defendant and Respondent.

## COUNSEL

Lewis, Rouda & Winchell, Paul S. Sigelman and Marvin E. Lewis for Plaintiff and Appellant.

Thomas J. Cunningham and John P. Sparrow for Defendant and Respondent.

## Opinion

**ELKINGTON, J.**—Appellant B. Wong filed a petition for writ of mandate in the superior court against respondent Regents of the University of California. He alleged that he had been enrolled as a graduate student in the university's School of Medicine and that on or about July 2, 1968, he was given written notice that he was dismissed from the school.

He further alleged:

### "VI

"That on or about July 2, 1968, petitioner had completed the Third (3rd) Year of Medical School of the University of California; that petitioner had successfully passed all the courses of the Third (3rd) Year and had met the requirements set or outlined for him during the course of study of the Third (3rd) Year of Medical School. That, in fact, petitioner had repeated the Third (3rd) Year of study upon the request of the Dean of the Medical School and had at the time of dismissal, attended the Medical School for a total of four (4) academic years; that petitioner successfully passed all his courses in the Third (3rd) Year but voluntarily followed advice given him and repeated the academic year improving grades in all courses that were repeated. That, in fact, at the time dismissed, petitioner had successfully passed and completed all the academic requirements of the First (1st), Second (2nd) and Third (3rd) Years of Medical School.

### "VII

"That at all times mentioned herein petitioner has conducted himself both morally and ethically according to the highest standards of propriety and has remained at all times free of any unbecoming behavior capable of subjecting him to disciplinary action or dismissal. . . .

### "X

"That respondents, and each of them, and their agents, based the dismissal of the petitioner on the delegated authority of the REGENTS OF THE UNIVERSITY OF CALIFORNIA as set forth in Section 900 of the Academic Senate Manual, which states: 'The status of students in the Schools of Dentistry, Medicine, Nursing and Pharmacy in the San Francisco Division shall be determined by the appropriate faculty or its designated agent. Students may be placed on probation or made subject to dismissal not only for scholastic deficiencies but also for deficiencies in other qualifications for these professions.'

### "XI

"By imposing the above-mentioned dismissal upon petitioner, respondents, and each of them, proceeded in excess of its jurisdiction and denied petitioner due process of law and prejudically abused its discretion in that the rules and regulations of the University of California which it was alleged petitioner failed to qualify, were vague and ambiguous and did not give petitioner notice of the standards or methods they purportedly required in that there is no means of determining 'the deficiencies in other qualifications'; that there is no standard set forth as a guide to the requirements, if any, alleged to be the cause of petitioner's dismissal as set forth in the Academic Senate Manual, Section 900, referred to hereinabove. . . .

### "XIV

"That petitioner has exhausted his administrative remedies and has no appeal nor any plain, speedy or adequate remedy at law."

By his petition Wong sought to compel respondent to "proceed forthwith to classify petitioner Wong as a Fourth (4th) Year Medical Student in the next session of the Medical School of the University of California at San Francisco, reinstating petitioner fully as a student therein."

Respondent thereafter filed a general demurrer to the petition "on the ground that it does not state facts sufficient to constitute a cause of action."

With the demurrer respondents filed an "Answer to Writ of Mandate" denying certain of the petition's allegations and alleging, among other things: (1) that Wong was found to be scholastically deficient in his ultimate fitness to practice medicine; (2) that his four-year cumulative scholastic performance placed him at the bottom of a class of 122 students; (3) that he had not exhausted certain available administrative remedies; and (4) that he was dismissed at his own request in order to enroll in the university's College of Letters and Sciences.

A hearing was thereafter held, the record of which is not before us. Following that hearing the court entered "Judgment Denying Peremptory Writ." The judgment was based upon "Findings of Fact and Conclusions of Law," dated April 1, 1969, which in part recited: "The Court heard and examined the proof, including documentary evidence, offered by the respective parties. . . ." The "documentary evidence" appears to have been the allegations of respondent's verified answer and certain exhibits attached thereto. Generally the allegations of the answer were found to be true. No ruling was made on respondent's demurrer.

Wong then moved "To Reopen for Further Consideration." Among

other things he insisted: That the court had heard argument only on the general demurrer and did not hear the case on the merits; that the court had improperly accepted the recitals of respondent's answer as true without giving him an opportunity to respond thereto; that the findings, conclusions, and judgment were improper; and that the court should only have ruled on the demurrer. ■ The motion to reopen for further consideration was granted, and an order was signed and filed as follows: "Good Cause Appearing Therefor, the Memorandum Decision heretofore entered . . . is hereby set aside and the above entitled matter is reopened." We interpret this order, as did the parties in the superior court, to be an order setting aside the judgment.[1]

Another hearing was held May 12, 1969, following which the court "denied the Petition for Writ of Mandate and sustained a Demurrer thereto without leave to amend." Judgment was thereafter entered, (1) denying the peremptory writ application on the grounds, among others, stated in the findings of fact and conclusions of law of April 1, 1969 (see *ante*), *and* (2) sustaining respondent's general demurrer without leave to amend. ■ This judgment purports to be both a decision on the merits of Wong's writ application, *and,* to be a dismissal of the proceedings upon sustaining of the demurrer without leave to amend. The dual nature of the judgment is significant; as a judgment on the merits, upon becoming final it would be res judicata as to the issues decided (see generally 3 Witkin, Cal. Procedure (1954) pp. 1926-1927); while as a judgment of dismissal upon the sustaining of a demurrer, it ordinarily would not (see 3 Witkin, *supra,* pp. 1938-1939; *Lunsford* v. *Kosanke,* 140 Cal.App.2d 623, 627-631 [295 P.2d 432]). It is this judgment from which Wong has appealed.

From a reading of the record of the May 12, 1969 hearing it becomes apparent that the only issue before the court was respondent's general demurrer. Obviously then, insofar as it purports to be a judgment on the

---

[1]Respondent contends on this appeal, for the first time, that the order "reopening the matter" after entry of judgment was a nullity, and that therefore such judgment, now final, is dispositive of the issues before us. The contention is twofold: (1) the order "reopening the matter" does not purport to set aside the judgment, and (2) assuming, *arguendo,* that it does, there is no statutory authority for such procedure.

The obvious intent of the order was to set aside the judgment as having been inadvertently made. " 'If the language used . . . is such as to identify with reasonable certainty the order which is made, such order, if otherwise tenable, will be given effect.' " (*Western Greyhound* v. *Superior Court,* 165 Cal.App.2d 216, 219 [331 P.2d 793]; *Cox* v. *Tyrone Power Enterprises,* 49 Cal.App.2d 383, 389 [121 P.2d 829].) And where a judgment was entered "through the inadvertence or improvidence of the trial court, it had the power independent of statute, to correct the mistake by amending or setting aside the judgment. . . ." (*Phillips* v. *Trusheim,* 25 Cal.2d 913, 916 [156 P.2d 25]; see also *Key System Transit Lines* v. *Superior Court,* 36 Cal.2d 184, 187-188 [222 P.2d 867].)

merits, it was inadvertently and erroneously entered. (See *Tringham* v. *State Board of Education,* 137 Cal.App.2d 733, 739 [290 P.2d 980].)

The remaining question before us is whether Wong's petition for mandate states grounds for the requested relief. In resolving such an issue "Neither trial nor appellate courts should be distracted from the main issue, or rather, the only issue involved in a demurrer hearing, namely, whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action." (*Griffith* v. *Department of Public Works,* 141 Cal.App.2d 376, 381 [296 P.2d 838].)

■ It is conceded by respondent that the dismissal of a medical student may be judicially set aside where it appears to have been arbitrary, capricious or in bad faith. (See *Connelly* v. *University of Vermont and State Agr. Col.,* 244 F.Supp. 156, 159, hereinafter referred to.)

■ By its demurrer respondent admitted "the truth of all allegations which are well pleaded, however improbable the facts may be." (*Lee* v. *Hensley,* 103 Cal.App.2d 697, 704 [230 P.2d 159].)

■ We advert to the petition's paragraphs VI, VII, X and XI (quoted *ante*). These allegations, unexplained and uncontroverted in any way as they are for purposes of demurrer, must reasonably be held to allege that the university officials were acting arbitrarily and capriciously in Wong's dismissal. The petition for mandate accordingly stated a cause of action, and the judgment, insofar as it dismissed the mandate proceedings upon the sustaining of respondent's general demurrer, was erroneous. The judgment, for that reason also, must be reversed.

■ Respondent's secondary contention that Wong's petition for mandate is defective since he has not alleged "that he exhausted his administrative remedies by appealing to respondent" is without merit. The statement of paragraph XIV (quoted *ante*) "That petitioner has exhausted his administrative remedies" is a sufficient allegation.

The parties have presented to us certain other questions of law, the resolution of which has become unnecessary in reaching our conclusion that the judgment must be reversed. However, since their decision will probably be essential to the final determination of the case we are required to pass upon them. (Code Civ. Proc., § 53; *Yarrow* v. *State of California,* 53 Cal.2d 427, 439-440 [2 Cal.Rptr. 137, 348 P.2d 687]; *Salsbery* v. *Ritter,* 48 Cal. 2d 1, 6 [306 P.2d 897]; *Sloboden* v. *Time Oil Co.,* 131 Cal.App.2d 557, 563 [281 P.2d 85]; *Chamberlain Co.* v. *Allis-Chalmers Mfg. Co.,* 74 Cal. App.2d 941, 942-943 [170 P.2d 85].)

The first of such questions concerns the extent of permissible judicial review of a medical school's determination that a student's scholastic standing and qualifications are such that he is subject to dismissal.

The so-called rule of "judicial nonintervention in scholastic affairs" was discussed in *Connelly* v. *University of Vermont and State Agr. Col., supra,* 244 F.Supp. 156. There, after collecting and analyzing the authority on the subject, the court stated (pp. 159-161): "Where a medical student has been dismissed for a failure to attain a proper standard of scholarship, two questions may be involved; the first is, was the student in fact delinquent in his studies or unfit for the practice of medicine? The second question is, were the school authorities motivated by malice or bad faith in dismissing the student, or did they act arbitrarily or capriciously? In general, the first question is not a matter for judicial review. However, a student dismissal motivated by bad faith, arbitrariness or capriciousness may be actionable." (P. 159.)

"This rule has been stated in a variety of ways by a number of courts. It has been said that courts do not interfere with the management of a school's internal affairs unless 'there has been a manifest abuse of discretion or where [the school officials'] action has been arbitrary or unlawful,' State ex rel. Sherman v. Hyman, 180 Tenn. 99, 171 S.W.2d 822, cert. den. 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1942), or unless the school authorities have acted 'arbitrarily or capriciously', Frank v. Marquette University, 209 Wis. 372, 245 N.W. 125 (1932), or unless they have abused their discretion, Coffelt v. Nicholson, 224 Ark. 176, 272 S.W.2d 309 (1954), People ex rel. Bluett v. Board of Trustees of University of Illinois, 10 Ill.App.2d 207, 134 N.E.2d 635, 58 A.L.R.2d 899 (1956), or acted in 'bad faith', Barnard v. Inhabitants of Shelburne, supra, and see 222 Mass. 76, 109 N.E. 818 (same case).

"The effect of these decisions is to give the school authorities absolute discretion in determining whether a student has been delinquent in his studies, and to place the burden on the student in showing that his dismissal was motivated by arbitrariness, capriciousness or bad faith. The reason for this rule is that in matters of scholarship, the school authorities are uniquely qualified by training and experience to judge the qualifications of a student, and efficiency of instruction depends in no small degree upon the school faculty's freedom from interference from other noneducational tribunals. It is only when the school authorities abuse this discretion that a court may interfere with their decision to dismiss a student." (Pp. 159-160.)

"The rule of judicial nonintervention in scholastic affairs is particularly applicable in the case of a medical school. A medical school must

be the judge of the qualifications of its students to be granted a degree; Courts are not supposed to be learned in medicine and are not qualified to pass opinion as to the attainments of a student in medicine. . . ." (Pp. 160-161.)

Recently, citing *Connelly* v. *University of Vermont and State Agr. Col., supra,* the Court of Appeal of Florida passed upon a medical student's complaint that he had been unlawfully dismissed. The court said: "On the question of determining whether a student has failed to meet the academic requirements of a school, there is a wide discretion permitted by school authorities, and courts will not interfere, unless the school authorities are shown to have acted in bad faith or exercised their discretion arbitrarily. . . ." (*Militana* v. *University of Miami* (Fla.App.) 236 So.2d 162, 164.)

In the case of *Mustell* v. *Rose* (1968) 282 Ala. 358 [211 So.2d 489], a student filed an action to require his reinstatement "as a student in the Medical College of the University of Alabama, to promote him to the senior class, and to change his grades in the courses of medicine and surgery from failure to passing. . . ." (P. 360.) The trial court entered judgment against the student, stating (p. 362): "Do the scholastic heads, in charge of the course of study of a medical student in the Medical College of the University of Alabama, have the power to determine, from an overall consideration of a student's knowledge and performance, (including his grades), his ultimate fitness to practice medicine, and to dismiss him as a student if, in their professional opinion, in fairness and without bias, the overall knowledge and performance of the student warrants dismissal? The Court must answer this question in the affirmative." The Supreme Court of Alabama, relying heavily on *Connelly* v. *University of Vermont and State Agr. Col., supra,* 244 F.Supp. 156, and the authority there cited, affirmed.

The same rule has been held applicable to other academic disciplines.

In *Edde* v. *Columbia University* (1957) 8 Misc.2d 795 [168 N.Y.S.2d 643], the dissertation of a candidate for the Doctor of Philosophy degree was rejected on condition that it could be revised and resubmitted. The doctoral candidate sought a court order compelling acceptance of the dissertation without change. Noting that the university's action was not established as arbitrary, capricious, or unreasonable, the court denied relief stating (at p. 644): "The Court may not substitute its own opinion as to the merits of a doctoral dissertation for that of the faculty members whom the University has selected to make a determination as to the quality of the dissertation."

Wong places much reliance on *Soglin* v. *Kauffman,* 295 F.Supp. 978,

which calls attention to developments of recent years in the "relationship of academic institutions to the court" and the increasing judicial disposition "to intervene in school disciplinary situations involving major sanctions." (Pp. 986-987.) But this comment concerns student campus demonstrations, procedural due process, and substantive school rules of student behavior. It relates not at all to the subject before us, the scope of a university's right to dismiss for overall scholastic deficiency.

■ Another question presented to us by the briefs of the parties relates to the rule known as section 900 of the university's Academic Senate Manual, and set forth in paragraph X of Wong's petition (see *ante*). Wong contends that its provision, "Students may be placed on probation or made subject to dismissal not only for scholastic deficiencies *but also for deficiencies in other qualifications for these professions*"[2] is void, for it is so vague and overbroad as to be a deprivation of the constitutional right of due process." (Italics added.)

In *Roth* v. *United States*, 354 U.S. 476, 491 [1 L.Ed.2d 1498, 1510-1511, 77 S.Ct. 1304], considering a claim of vagueness of an obscenity statute, it was stated: "This Court . . . has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .' "

*Smith* v. *Peterson*, 131 Cal.App.2d 241, 246 [280 P.2d 522, 49 A.L.R. 2d 1194], passing upon a contention that a Vehicle Code section was unconstitutionally vague and overbroad, held: "Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. Doubts as to its construction will not justify us in disregarding it. In determining whether a penal staute is sufficiently explicit to inform those who

---

[2]We note that both parties to this appeal rely on an "Announcement of the School of Medicine," which is no part of Wong's petition, but which nevertheless appears in the record furnished this court. This announcement provides:

"Third-year students are assigned patients and assume responsibility for the complete history, physical examination, pertinent laboratory data, and observations on the course of the illness. . . . Ward rounds, conferences, and tutorial type instruction insure acquaintance with the diagnostic and therapeutic management of patients with illnesses included in internal medicine. . . .

"The third-year teaching program is conducted at the San Francisco General Hospital and includes sixty-eight one-hour didactic lectures, as well as a nine-week clinical inpatient clerkship. Particular emphasis is placed upon acquisition of basic diagnostic skills. . . ."

It would appear that there are many tests of medical student proficiency in addition to the successful passing of written course examinations.

are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding."

An authority closely comparable to the case at bench is *Dehaan* v. *Brandeis University,* 150 F.Supp. 626, where the court had under consideration a regulation reserving "the right to sever the connection of any student with the university for appropriate reason." Finding no constitutional fault with the regulation the court said (pp. 627-628): "*The problem of what constitutes an appropriate reason must clearly be left to those authorities charged with the duty of maintaining the standards and discipline of the school.* . . . The court is in a poor position indeed to substitute its judgment for that of the university, particularly in this case which involves a graduate student enrolled in a very small department where the major part of instruction is given on an individual and personal basis. . . . *The plaintiff's qualifications as a scholar and prospective teacher can be judged only by his professors who must have complete autonomy in their decision concerning the qualities of his work* and his good character." (Italics added.)

We point out several other representative authorities sustaining statutes and regulations of varying kinds against contentions of constitutional vagueness.

In *Goldsmith* v. *Board of Education,* 66 Cal.App. 157 [225 P. 783], a teacher had been dismissed for "unprofessional conduct." The court said (p. 165): " 'If "unprofessional conduct" as a ground of dismissal is void because it leaves too much to the judgment or discretion of the Board of Education in determining what constitutes it, then "immoral" conduct, "incompetence" and "evident unfitness for teaching" must likewise be held void for the same reason and practically all of the vitally necessary power of the boards will be stripped from them. . . .' " The same statutory term, "unprofessional conduct," was later considered by our Supreme Court in *Board of Education* v. *Swan,* 41 Cal.2d 546, 553 [261 P.2d 261]. The court stated: "The fact that the term 'unprofessional conduct' is not defined by statute authorizing the dismissal of a teacher . . . does not render it void for uncertainty. . . ."

And, upheld against contentions of unconstitutional vagueness, have been the terms " 'good moral character' " (*Konisgsberg* v. *State Bar,* 366 U.S. 36, 37 [6 L.Ed.2d 105, 109, 81 S.Ct. 997]); "act which is prohibited by law" (*American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 208, fn. 1 [28 Cal.Rptr. 700, 379 P.2d 4]; "conduct unbecoming a student" (*Dixon* v. *Alabama State Board of Education,* 294 F.2d 150, 152, fn. 2); " 'conduct unbecoming an employee' " (*Pranger* v. *Break,* 186 Cal.App.2d 551, 552 [9 Cal.Rptr. 293]; and "acts . . . inimical to the public service" (*Black* v. *State Personnel Board,* 136 Cal.App.2d 904, 907 [289 P.2d 863]).

The foregoing authorities impel us to hold that the complained of regulation of the School of Medicine is not unconstitutionally vague or overbroad.

■ Wong has asked this court to hold, as a matter of law, that having "advised and allowed appellant to successfully repeat the third year" respondent is *estopped* to assert "that there is a deficiency." This contention will undoubtedly be raised again in the superior court.

It would appear that the evidence upon which this contention is based will be in dispute; if so, then the existence of an estoppel is a question of fact, to be determined by the trier of fact. (*Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129]; *Cal. Cigarette Concessions* v. *City of L.A.,* 53 Cal.2d 865, 868 [3 Cal.Rptr. 675, 350 P.2d 715].)

We have read and considered the case of *Blank* v. *Board of Higher Education of City of N.Y.,* 51 Misc.2d 724 [273 N.Y.S.2d 796], relied upon by Wong in support of his estoppel contention. In that case the court found *no reasonable basis* for the conduct of the school authorities in refusing an academic degree. Although the court expressed itself in terms of *estoppel,* the case seems to fall within the exception noted by *Connelly* v. *University of Vermont and State Agr. Col., supra,* 244 F.Supp. 156, 159, that the court will intervene in academic matters where the school authorities have acted "arbitrarily or capriciously."

■ As noted, respondents contended that Wong was dismissed from the School of Medicine at his own request. Wong insisted that this request was not voluntary, but was instead made under coercion of officials of the School of Medicine. This also raises an issue of fact to be resolved, if necessary, by the superior court.

The judgment is reversed. The superior court will overrule the general demurrer and thereafter take proceedings not inconsistent with this opinion.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 29, 1971.