[Civ. No. 24987. First Dist., Div. Two. Feb. 17, 1969.]

MICHAEL EISEN, Plaintiff and Appellant, v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants and Respondents.

Wells & Chesney and Richard L. Chesney for Plaintiff and Appellant.

Thomas J. Cunningham, Milton H. Gordon, Donald L. Reidhaar and James E. Holst for Defendants and Respondents.

TAYLOR, J.—Plaintiff, Michael Eisen, appeals from a judgment of dismissal entered on an order sustaining, without leave to amend, the demurrer of defendants, The Regents, and certain officers of the Berkeley campus of the University of California hereafter collectively referred to as University). Plaintiff contends that the University's policy that registration statements filed by student organizations are records open to inspection by the public, violates his rights of free speech and association under the First and Fourteenth Amendments to the Constitution of the United States. In the alternative, he also contends that his complaint for injunctive relief stated sufficient facts to warrant an opportunity to amend.

The basic facts are not in dispute. Plaintiff was a law stu-

dent at the University's Berkeley campus and an officer of a student organization engaged in the advocacy of dissident ideas. This organization was fully qualified as a student organization "registered" by the University. An organization that has complied with registration procedures and attained the status of a "registered" student organization, is entitled to several privileges on campus, including the use of University facilities for meetings, fund raising, recruiting participants, posting and distributing literature, as well as the privilege of inviting non-University speakers to address campus meetings. As a condition of "registration" the University required that the organization submit to the appropriate campus officer a statement of its purpose and the names of its officers. Plaintiff's name was submitted under this requirement.

In October 1966, a member of the public, Patricia Atthowe, filed a suit against the officers of the Berkeley campus praying, inter alia, the disclosure of the names of the officers and stated purposes of all student campus organizations "registered" for the spring semester of the 1965-1966 academic year. On October 17, 1966, the University made public a letter written to Patricia Atthowe indicating that on advice of its counsel, the University would allow her to examine the documents containing the information she demanded.

On October 25, the University adopted a policy "that registration statements filed with the University by student organizations are records open to inspection by University students and staff and members of the public." This action ensued, and a temporary restraining order issued. After a hearing, the trial court found "that public policy as framed within the law of this State requires disclosure of the subject records, such public policy being dominant and controlling to the right of associational privilege," and entered its orders dissolving the temporary order and dismissing the action.

The parties agree that the University's rule-making powers and its relationship with its students and student organizations are subject to federal constitutional guarantees (*Goldberg* v. *Regents of the University of Cal.*, 248 Cal.App.2d 867, 874 [57 Cal.Rptr. 463]); and that ideas, no matter how unpopular or erroneous in their dissemination, including the formation of groups and associations to advance such ideas are fully protected by the First Amendment (*Huntley* v. *Public Utilities Com.*, 69 Cal.2d 67, 75 [69 Cal.Rptr. 605, 442 P.2d 685]).

Preliminarily, we turn to the University's contention that the registration statement here in question was a "public record" pursuant to former section 1227 of the Government Code or a "public writing" pursuant to former sections 1888, 1892 and 1894 of the Code of Civil Procedure, set forth below,[1] all since repealed (Stats. 1968, ch. 1473) and replaced by the more comprehensive provisions of the new public records act, sections 6250-6259 of the Government Code. We conclude that it is not necessary to answer this complex question.[2] Even if the "public record" statutes were otherwise applicable, a determination of their constitutionality with respect to First Amendment issues would nevertheless be required in the resolution of this case.

Consequently, we deal, as we did in *Goldberg, supra,*

---

[1]Former section 1227: "The public records and other matters in the office of any officer, *except as otherwise provided,* are at all times during office hours open to inspection of any citizen of the State." (Italics added.)

Former Code of Civil Procedure sections 1888, 1892 and 1894:

Section 1888: "Public writings are: 1. The written acts or records of the acts of the sovereign authority, of official bodies and tribunals, and of public officers, legislative, judicial, and executive, whether of this state, of the United States, of a sister state, or of a foreign country; 2. Public records, kept in this state, of private writings."

Section 1892: "Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute."

Section 1894: "Public writings are divided into four classes: 1. Laws; 2. Judicial records; 3. Other official documents; 4. Public records, kept in this state, of private writings."

[2]For example, under the former statutes, it is clear that any record that the law requires an officer to keep, or that an officer keeps as necessary or convenient to the discharge of his duties is a public record. However, every writing in custody of a public agency is not necessarily a public record (*City Council* v. *Superior Court,* 204 Cal.App.2d 68 [21 Cal.Rptr. 896]; *People* v. *Olson,* 232 Cal.App.2d 480 [42 Cal.Rptr. 760]); if a particular document does not fall within the provisions of former Code of Civil Procedure section 1888, it is not a "public writing" (*Mushet* v. *Department of Public Service,* 35 Cal.App. 630 [170 P. 653]). Under former Code of Civil Procedure section 1892, not every record apart from those specifically rendered confidential by statute is public; there remains a category of records in which the public as a whole has no interest; for example, a college student's grades (*People* v. *Russel,* 214 Cal.App.2d 445 [29 Cal.Rptr. 562]). The names and addresses of students at public schools, however, may be "other matters" of general interest under former Government Code section 1227 (16 Ops.Cal.Atty. Gen. 163). Whether writings filed by private individuals with public agencies are public records is a question that is better resolved by a determination under the specific facts of each case than a general holding making all records of a particular state agency "public records" for all purposes.

pages 876-877,[3] with the issue presented in the constitutional framework of whether here, the University's policy of annexing limited disclosure conditions to the privilege of becoming a registered campus organization entitled to use campus facilities, are justified by a sufficient state interest to outweigh the alleged impairment of plaintiff's constitutional rights (*Canon* v. *Justice Court,* 61 Cal.2d 446, 456 [39 Cal.Rptr. 228, 393 P.2d 428]).

Plaintiff argues that he is entitled to a constitutional right of anonymity and that the disclosure[4] of the "registration" statements to inspection by members of the public has a deterrent effect on his rights of free speech and association. He relies on *N.A.A.C.P.* v. *Alabama,* 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163], *Bates* v. *Little Rock,* 361 U.S. 516 [4 L.Ed.2d 480, 80 S.Ct. 412], and *Talley* v. *California,* 362 U.S. 60 [4 L.Ed.2d 559, 80 S.Ct. 536]. Therefore, we review these in detail, as well as the two most recent pertinent decisions of our state Supreme Court, *Cannon* v. *Justice Court, supra,* and *Huntley* v. *Public Utilities Com.,* 69 Cal.2d 67 [69 Cal.Rptr. 605, 442 P.2d 685], the latter unknown to both parties at the oral argument.

*N.A.A.C.P.* v. *Alabama, supra,* arose out of a state investigation of the organization's alleged failure to comply with a statute requiring registration of foreign corporations doing business in the state. Pursuant to a motion by the state, the N.A.A.C.P. produced records of its activities but refused to turn over its membership lists and was subsequently convicted of contempt. The U.S. Supreme Court reversed the conviction on a finding that compelling an individual to disclose his membership in the group would restrain his freedom of association; the history of the organization demonstrated that disclosure was likely to induce members to withdraw and dissuade others from joining; that the attitude toward it created a fear of exposure and the consequences that might flow from such exposure (at p. 462 [2 L.Ed.2d at pp. 1499-1500]). In determining whether the state's interest in securing the mem-

---

[3]The University, as in *Goldberg,* again relies on *Hamilton* v. *Regents of University of Cal.,* 293 U.S. 245 [79 L.Ed. 343, 55 S.Ct. 197]. But as we noted in *Goldberg, supra,* page 875, the approach of that case has long since been abandoned and the proper approach to problems of this kind is that all aspects relating to attendance at publicly financed institutions of higher education are regarded as a benefit.

[4]Plaintiff does not challenge the reasonableness of the University's requirement of these "registration" statements for its own administrative purposes. His argument is limited to the disclosure to the public of the information acquired.

bership data might justify the restraint, the court found that since the N.A.A.C.P. had produced much of the desired information, including the names of its employees and officials, the disclosure of the names of rank and file members had no substantial bearing on the issue raised. Accordingly, the state's interest was insufficient to justify the infringement on freedom of assembly.

In *Bates*, the Supreme Court voided a conviction for failure to comply with an amendment to the city's licensing tax provisions requiring that organizations operating in the city file lists of contributors, members and other data. In *Bates*, likewise, the names and addresses of the officers of the organization had been filed and the court found that the information requested did not seem to be related to the taxing provisions. Thus, here again, it was determined that the state's interest was insufficient to warrant the clear impairment of associational freedom.[5] In both *N.A.A.C.P.* and *Bates*, there was evidence that members of the organization had been subjected to harassment and threats of bodily harm.

No such evidence was present in *Talley* v. *California*, 362 U.S. 60 [4 L.Ed.2d 480, 80 S.Ct. 412], wherein the court compared compulsory disclosure with outright prohibition, and concluded that identification and fear of reprisal might deter peaceful discussions of public matters of importance. Accordingly, the Supreme Court struck down as void on its face, for infringing the freedom of expression, a Los Angeles city ordinance that prohibited public distribution *of all handbills* unless they bore on their face the name and address of the author, publisher and distributor. The court noted that the Los Angeles ordinance was not narrowly drawn to reach only handbills that were obscene, offensive or advocated unlawful conduct. Thus, *Talley* establishes that the First Amendment right of freedom of speech includes the right to remain anonymous under the particular facts of that case.

The California Supreme Court was faced with delineating the extent of the right to anonymity in *Canon* v. *Justice Court*, 61 Cal.2d 446 [39 Cal.Rptr. 228, 393 P.2d 428]. Though the court held Elections Code section 1047 unconstitutional on other grounds, it did uphold the disclosure

---

[5] *N.A.A.C.P.* v. *Alabama* also limited and distinguished *Bryant* v. *Zimmerman*, 278 U.S. 63 [73 L.Ed. 184, 49 S.Ct. 61, 62 A.L.R. 785], indicating that an organization (the Ku Klux Klan) that had engaged in unlawful conduct and had failed to supply any of the information required by statute, could be compelled to disclose its membership.

requirement thereof by distinguishing *Talley* as follows, at page 455: "Nor did *Talley* hold that anonymity is always protected. It relied on *Bates* and *N.A.A.C.P.* for the proposition that 'there are times and circumstances when States may not compel members of groups engaged in the dissemination of ideas to be publicly identified.' (*Talley* v. *State of California, supra,* 362 U.S. 60, 65 [80 S.Ct. 536, 4 L.Ed.2d 559, 563].) In *Talley* the ordinance was so broad as to bar 'all handbills under all circumstances anywhere' which are issued anonymously. [Citations.] The court expressly stated that it was not passing on the validity of an ordinance intended to and in fact limited to the accomplishments of valid purposes. (*Id.,* at p. 64 [4 L.Ed.2d at pp. 562-563].) Rather, the ordinance was held invalid 'because the breadth of its application went far beyond what was necessary to achieve a legitimate governmental purpose.' (*Shelton* v. *Tucker,* 364 U.S. 479, 489 [81 S.Ct. 247, 5 L.Ed.2d 231, 238].)'"

Recently, in *Huntley* v. *Public Utilities Com.,* 69 Cal.2d 67, 75 [69 Cal.Rptr. 605, 442 P.2d 685], the California Supreme Court relied on *Talley* to hold unconstitutional certain tariff schedules of the State Public Utilities Commission. These schedules, as enforced by Pacific Telephone Company, required that subscribers who transmit recorded messages over the telephone company's facilities, include in the recording the name of the individual or organization responsible for the message and the address unless the latter was published in a current directory.

In rejecting an argument that the telephone company, as an intervening neutral or unsympathetic commercial instrumentality, could disassociate itself from authorship of the message by compelling disclosure, the court said at page 76: "The United States Supreme Court has never distinguished between 'primary actors' and 'intervening neutral or unsympathetic commercial instrumentalities.' PT&T is not a neutral instrumentality as is a newspaper which may divorce itself from an advertisement in any manner it chooses. But the telephone company is a public utility subject to the control of the commission, a state agency. The proposed tariff is efficacious *only* because of state action. (Cf. *Public Utilities Com.* v. *Pollack,* 343 U.S. 451, 462-463 [96 L.Ed. 1068, 1077-1078, 72 S.Ct. 813].) Constitutional scrutiny of state action is not predicated upon finding a direct restriction, there only need be a causative relation between the state action and the obnoxious

result. (*N.A.A.C.P.* v. *Alabama, supra,* 357 U.S. 449, 463 [2 L.Ed.2d 1488, 1500].)''

The court also rejected an argument that the case was controlled by *Lewis Publishing Co.* v. *Morgan,* 229 U.S. 288 [57 L.Ed. 1190, 33 S.Ct. 867],[6] and stated that restrictions on freedom of speech are not justified simply because alternative forms of expression are available. The Supreme Court then held unconstitutional the tariff schedules requiring complete disclosure of the information and noted that no legitimate state interest in justifying the impairment has been presented and that the claimed need of the telephone company to disassociate itself from authorship of the recorded messages could be achieved only in a manner not restrictive of First Amendment rights. The court distinguished *Canon,* at page 75, by noting that the disclosure requirement there upheld abridged freedom of speech, but under the particular facts, the infringement was minimal and justified by a sufficient state interest.

We think that questions of associational rights, like the one presented here, should be framed and discussed in terms of other constitutional doctrines, such as free speech.[7] The question here presented is whether the right of the People of this state to know the identity and responsible officers of student organizations that may be using the publicly financed and owned campus facilities of the University is a sufficient state interest to warrant the indirect infringement of plaintiff's First Amendment rights.

Significantly, none of the cases heretofore cited involved the use of public property. However, just as the People of the state have a right to know how their elected officials con-

---

[6] In that case, the plaintiff challenged the registration and publication provisions of the Post Office Appropriation Act that required every newspaper using the second-class mails to file with the Postmaster General a list of its editors, publishers, owners and stockholders, and to publish this information twice annually. Any publications that did not comply were to be denied the privilege of the mail. The Supreme Court construed the phrase ''privilege of the mail'' to mean only that of being classified as second-class matter, avoided the broader question, and held that since second-class matter was carried at a considerable loss and thus reflected a government subsidy designed to promote the dissemination of knowledge, Congress could place functionally related conditions on the granting of such subsidies.

[7] For this helpful analytical approach, we are indebted to *Freedom of Association and Freedom of Expression* by Thomas I. Emerson, 74 Yale Law Journal 1. We are also appreciative of the penetrating approach of the Comment on *The Constitutional Right to Anonymity,* 70 Yale Law Journal 1084.

duct the public business,[8] they are entitled to know the identity and responsible officers of organizations that are granted the privileges of becoming campus organizations and using the public property and facilities of the University. Nor can it be successfully argued that the protection of plaintiff's First Amendment rights requires complete anonymity. The U.S. Supreme Court has held that First Amendment freedoms are not violated by legislation requiring "a modicum of information" of lobbyists (*United States* v. *Harriss*, 347 U.S. 612, 613-617 [98 L.Ed. 989, 994-996, 74 S.Ct. 808]).[9] The court said at page 625 [98 L.Ed.at pp. 1000-1001]: "Toward that end, Congress has not sought to prohibit these pressures. It has merely provided for a modicum of information from those who for hire attempt to influence legislation or who collect or spend funds for that purpose. It wants only to know who is being hired, who is putting up the money, and how much. It acted in the same spirit and for a similar purpose in passing the Federal Corrupt Practices Act—to maintain the integrity of a basic governmental process. See *Burroughs & Canon* v. *United States*, 290 U.S. 534, 545 [78 L.Ed. 484, 489, 54 S.Ct. 287]."

We question the consistency of plaintiff's assertion of a right to keep anonymous his relationship as an officer of the organization (a relationship and responsibility he presumably

[8]This is most eloquently expressed in the preamble to the Ralph M. Brown Act, Government Code section 54950: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

"The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created."

[9]Other pertinent cases are: *Lewis* v. *Morgan*, discussed in footnote 6 above; *Cox* v. *New Hampshire*, 312 U.S. 569 [85 L.Ed. 1049, 61 S.Ct. 762, 133 A.L.R. 1396]; *Poulos* v. *New Hampshire*, 345 U.S. 395 [97 L.Ed. 1105, 73 S.Ct. 760, 30 A.L.R.2d 987], both of which upheld licensing requirements for some disclosure as a condition to holding a parade on public streets or a meeting in a public park, but did not indicate or deal with the question of the extent of disclosure required; *Thomas* v. *Collins*, 323 U.S. 516 [89 L.Ed. 430, 65 S.Ct. 315], wherein the court reversed a contempt conviction under a Texas statute requiring the registration of all labor organizers prior to any solicitation of members. The court noted that the requirement of prior registration was incompatible with an exercise of the rights of free speech and assembly where failure to register resulted in a penalty.

sought and assumed voluntarily)[10] in the absence of any immediate and direct threats of physical or other danger, as were admittedly present in *N.A.A.C.P.* v. *Alabama* and *Bates* v. *Little Rock, supra.* Significantly, while those cases clearly delineated the rights of rank and file members to remain anonymous, they did not deal with the question of whether the same right also applied to an officer of the organization. In both *N.A.A.C.P.* and *Bates, supra,* the court noted that since the information concerning the identity of the organization and the names of some of the responsible officers had been disclosed, the additional disclosure of the names of the rank and file members would not serve a legitimate state purpose. Thus, it can reasonably be inferred that the disclosure sufficient to identify the organization and the officers responsible for its activities is not equally repugnant to First Amendment freedoms.

Nor here, as in *Talley,* can it be said that the identification requirement of the University's policy and the disclosure of this limited information to a member of the public would unduly deter the freedom of expression of dissident organizations and their officers. In fact, it appears well designed to promote that freedom of expression in a manner consistent with the University's interest in insuring the orderly enjoyment of its facilities together with the public's right to ascertain the identity of organizations and the responsible officers[11] who are using public property. The Regents' policy here in issue is like a time, place and manner regulation of free speech enacted to maintain the integrity of the extracurricular aspects of the educational process at a public university (cf. *Goldberg* v. *Regents, supra*). The instant case is totally unlike the cases involving an attempted

[10]It is well established that a public university may exclude secret societes and their members (*Beta Sigma Rho, Inc.* v. *Moore* (1965) 46 Misc.2d 1030 [261 N.Y.S.2d 658]; *Webb* v. *State University of New York*, 125 F.Supp. 910, dismissed for want of a federal question, 348 U.S. 867 [99 L.Ed. 683, 75 S.Ct. 113]; and *Waugh* v. *Board of Trustees of University of Miss.*, 237 U.S. 589 [59 L.Ed. 1131, 35 S.Ct. 720].)

[11]At oral argument, plaintiff conceded that the identity of the organization could be made public, as well as the name of some person related to the organization who was responsible for the use of a University facility at any particular time. He argued that the officers should not be made public, as the officers were not necessarily the particular persons responsible for each use made by the organization of a University facility. Carrying plaintiff's argument to its logical conclusion, it would appear to us to lead to the disclosure of many more names than those of the current officers.

unconstitutional denial of the use of public property for the exercise of First Amendment rights (see *In re Hoffman*, 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353].)[12]

Impairments of First Amendment rights are "balanced" by determining whether there is a reasonable relationship between the impairment and a subject of overriding and compelling state interest. (*Canon* v. *Justice Court*, supra, p. 456). There can be no doubt that disclosure requirements may impair rights of free speech and association and that First Amendment rights are primarily intended to protect minority views (*Huntley* v. *Public Utilities Com.*, supra, p. 73). We conclude, however, as in *Canon* v. *Justice Court*, that here, the compelling interest of the public in being able to ascertain the information contained in the registration statement outweighs any minimal infringement of plaintiff's First Amendment rights.

It may be contended that even though the overriding purpose is legitimate and substantial, the purpose can be achieved by means more narrow than the University's policy in question (*Shelton* v. *Tucker*, 364 U.S. 479 [5 L.Ed.2d 231, 81 S.Ct. 247]). The only information made available to the public is the purpose of the organization and the names of its officers found on the registration statement submitted to the appropriate campus officer. We think this modicum of information is far from the overly broad measures condemned in *Talley* and *Huntley*, supra, and well within the express limits of *United States* v. *Harriss*, supra, and the inferential limits of *N.A.A.C.P.*, *Bates* and *Shelton* v. *Tucker*, 364 U.S. 479, 488-490 [5 L.Ed.2d 231, 237-239, 81 S.Ct. 247].[13]

As we agree with the trial court's conclusion that the complaint could not be amended to state a cause of action, we do not deem it necessary to discuss plaintiff's alternative contention.

The judgment appealed from is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

[12]In *Adderley* v. *Florida*, 385 U.S. 39 [17 L.Ed.2d 149, 87 S.Ct. 242], the U.S. Supreme Court concluded that the state was not required to permit persons to exercise First Amendment rights on public property under all circumstances.

[13]In *Shelton*, a statute requiring every teacher to file an affidavit listing all organizations to which he had belonged or contributed to in the preceding five years was held unconstitutional as it went beyond what might be justified in the exercise of the state's legitimate inquiry into the fitness and competency of its teachers. The opinion, like *N.A.A.C.P.* and *Bates*, permits an inference that there is a legitimate area of inquiry, without defining the limits of such an inquiry.