[Civ. No. 48959. Second Dist., Div. Four. Feb. 16, 1977.]

JACOB M. SHUFFER, JR., Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF THE CALIFORNIA STATE
UNIVERSITY AND COLLEGES et al., Defendants and Respondents.

210

## COUNSEL

Gerald Fink, Terrence McConville and Allen P. Loewe for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Thomas Scheerer and Martin H. Milas, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**JEFFERSON (Bernard), J.**—Petitioner Jacob M. Shuffer, Jr., sought a writ of mandate (pursuant to Code Civ. Proc., § 1085) to compel the respondents, Trustees of the California State University and Colleges and other named university officials, to grant petitioner a master of arts degree from California State University, Northridge, school of education, in psychological foundations—guidance. The action was filed November 22, 1974. Respondents demurred and also filed an answer to the petition. The demurrer was heard in the trial court on March 13, 1975. The trial court sustained the demurrer,[1] and gave petitioner 60 days within which to amend his petition. Petitioner did not amend, and an order of dismissal of the petition was entered on September 29, 1975, reflecting that respondents' motion to dismiss had been granted September 16, 1975. Petitioner has appealed the judgment (order of dismissal).

The petition alleges that petitioner was a graduate student in good standing and an approved candidate for a master of arts degree in education at California State University, Northridge (hereinafter, Northridge) during 1971 and 1972. He was a "classified" graduate student, one who had been accepted by the department of guidance and counseling in the school of education (hereinafter, Department) in a program which would lead to the degree.

Petitioner claims that he was required by the Department to enter into a "contract" with the Department, which set forth the requirements to be met by him to obtain the degree, including but not limited to completion of certain specified courses with a 3.0 grade point average. Petitioner undertook an accelerated program, obtained a straight "A" average or a 4.0 grade point average, and contemplated receipt of the M.A. degree in June 1972.

The petition alleges that all went well with petitioner until December 1971, when he "noticed what seemed to be a subtle change of friendly attitude toward the Petitioner on the part of certain DEPARTMENT and other COLLEGE faculty members that caused Petitioner to be wary."

---

[1]Although the minute order sustaining the demurrer is not a part of the clerk's transcript on appeal, the reporter's transcript of the March 13, 1975, hearing indicates that the demurrer was sustained without specification of the grounds.

According to the petition, petitioner registered for his 1972 spring semester courses—two courses that were the final courses petitioner was required to complete—numbered EDP 557 and EDP 559B. Professor Donald Dorsey (hereinafter, Dorsey) was the teacher of EDP 559B (hereinafter, The Course). The Course commenced its meetings on February 26, 1972. Petitioner arrived and was handed a letter dated 26 Feb. 72, signed by Dorsey (exhibit M, attached to the petition and incorporated therein by reference), which stated: "This letter is to clarify *an understanding between myself and Jacob Shuffer Jr.* regarding placement in the practicum EDP 559 A & B. This semester Jacob is to meet with Dr. Chernoffs' section of 559 A, however it is clearly understood that he is currently enrolled in 559 B *and if in the judgment of of [sic] his fellow practicum members and Dr. Chernoffs* he successfully completes this experience he will be given credit for *559 B.*" (Italics in original.)

Petitioner asserts that, in truth and in fact, there was no such agreement as was indicated in said letter. He further alleges that of all the persons enrolled in The Course, he alone was directed to meet with the Chernoff section of EDP 559A, and that he alone was subject to evaluation and grading by his fellow students.

Petitioner commenced meeting with the Chernoff class; he missed a meeting because he was not informed in time of the meeting. Petitioner's father contacted the university officials at Northridge. Both petitioner and his father became convinced that "a systematic effort was being made by members of the school faculty to get Petitioner out of COLLEGE and not grant him his Master's Degree."

Petitioner sought legal counsel. He was advised to insist upon attending meetings of The Course as taught by Dorsey, and did so throughout March 1972. When petitioner appeared for The Course class on March 25, 1972, he was handed another letter (attached to the petition and incorporated therein as exhibit T), dated March 23, 1972. This letter set forth the reasons why it was felt that petitioner should participate in EDP 559A, the section taught by Chernoff. The letter set forth that petitioner's placement with Chernoff's section was "in the best interest of yourself and the other practicum students" and that the structure of EDP 559A "allows for a much more extensive and closer interaction between supervisor and students, and provides a much more diverse set of learning experiences . . . ." This letter reiterated that if in the judgment of Dr. Chernoff, petitioner successfully completed section EDP 559A, petitioner would receive credit for The Course. It declared that two other

students were being required to meet with Dr. Chernoff's EDP 559A practicum group with a similar understanding that upon completion of that experience, they would receive credit for The Course. The letter was signed by Dorsey, Chernoff and Marion, the Department chairman.

On March 15, 1972, Dorsey had, in writing, asked petitioner to leave his class (see exhibit W, attached to the petition and incorporated therein by reference). Petitioner, however, continued to attend and even engaged his own "patient" for the purposes of practicing therapeutic techniques when Dorsey refused to assign a patient to him. Petitioner was given an "Incomplete" in The Course. In spite of this fact, petitioner was allowed to participate in graduation ceremonies at Northridge. His master's degree, however, has never been issued by the college. Petitioner claims that he did in fact *complete* The Course by his participation therein or by equivalent training elsewhere.

Petitioner asserts that he has been discriminated against in an unreasonable and capricious manner in violation of the equal-protection-of-the-laws provisions of the Fourteenth Amendment to the United States Constitution. He claims that respondents have failed to perform duties they were obligated to perform, and that they "wrongfully failed and refused and continue to fail and refuse, to grant Petitioner the degree which he has rightfully earned." Petitioner asserts that respondents specifically singled him out for requirements not made applicable to any other student, the essence of his claim that his Fourteenth Amendment rights were violated.

Petitioner's petition also contains the allegation that he "exhausted all available administrative remedies required to be pursued by him" before filing the petition for mandate.

Damages asserted by petitioner are that, due to the conduct of respondents, he was unable to continue his education as planned at the University of Michigan, he was unable to work as a licensed psychotherapist during the summer of 1972, he has been unable to secure appointment as a commissioned officer in the United States Navy without his master's degree, and he has been denied numerous other professional opportunities.

By their demurrer to the petition, respondents raised, among other issues, the fact that the litigation between petitioner and respondents has been protracted, and that this petition constitutes the *third* time that

petitioner has brought this dispute into the courtroom for resolution. Respondents appear to have raised the matter both as a plea in abatement and as a res judicata problem. To clarify the situation, we find it expedient to present pertinent procedural facts of this litigation.[2]

On April 24, 1972, petitioner filed his first petition for mandate against respondents, case No. C 28088, to compel his acceptance in The Course, EDP 559B. On May 30, 1972, respondents' demurrer to this first petition was sustained on two grounds: (1) failure to exhaust administrative remedies and (2) failure to allege a cause of action for mandate because petitioner was seeking the performance of a discretionary act. Petitioner was granted leave to amend. However, amendment was never undertaken by petitioner, nor was a dismissal entered, until, on October 29, 1974, petitioner sought dismissal of the petition, without prejudice. The superior court file reflects that, as requested by petitioner, entry of an order of dismissal was then made by the court clerk.

On August 6, 1973, petitioner filed a second action—a petition or complaint for an injunction, claiming a violation of his civil rights, and requesting damages of $10,000. The defendants or respondents were the same as those named in the first action, and in the present action. In this second action, petitioner requested that he be awarded his master's degree, and alleged the same general facts contained in the first petition and again in the third, the present litigation, the facts set forth, *ante.* This second action was numbered NWC 34310. Respondents demurred to the petition in the second action specially and generally, *i.e.,* informing the court of the pendency of the first action, and continuing to claim that petitioner had not stated a cause of action with respect to discretionary acts of respondents. The demurrer was sustained by the court, with leave to amend,[3] but no amendment was ever made. No judgment of dismissal was ever sought or granted; that action is still pending.

When the current matter was heard in the trial court, the court was informed by respondents' moving papers that there were other actions

[2]We have procured and examined two other files which relate to this matter and which have been lodged in the superior court; both are entitled Shuffer v. Trustees, et al., and one bears the number C 28088, the other NWC 34310. Our case was numbered NWC 41525.

[3]The claim of failure to exhaust administrative remedies had been abandoned, apparently because petitioner had submitted the matter to the Student Grievance Committee at Northridge and that committee had rejected his claim.

pending.[4] Respondents asserted that petitioner had brought the wrong type of action in that he should have proceeded pursuant to Code of Civil Procedure section 1094.5 (administrative mandate), and that once again, petitioner had failed to state a cause of action against respondents. The trial judge sustained the demurrer with leave to amend, and the judgment of dismissal was entered after petitioner had failed to amend.

In essence, petitioner has brought his claim to the courts alleging the same set of facts on three occasions. Apparently petitioner was not aware that his pleadings in action No. C 28088 could have been amended as developments altered his requests for relief; the respondents, for reasons that are unclear, failed to follow through on either the first or second petition, and seek a dismissal in either case because of petitioner's failure to amend after leave was granted.

We consider now the effect of these procedural events on the present litigation.

### Res Judicata

■ "The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy. It seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 147, p. 3292.) (Italics in original.) The doctrine applies basically to all types of final judgments that are rendered on the merits of litigation. (Witkin, *supra,* § 148, p. 3293.) It may apply to a final judgment, *i.e.,* a dismissal, even though entered after sustaining a demurrer, if the demurrer was sustained on substantive grounds. (Witkin, *supra,* § 173 et seq., p. 3315.)

■ But we cannot construe the dismissal, without prejudice, of petitioner's first action, sought and obtained by petitioner before the case was at issue, as "a final judgment on the merits." Thus, respondent's claim that petitioner is barred from relief on the ground of res judicata must be rejected as lacking in merit.

---

[4]The reporter's transcript in the instant case reflects that the trial judge inquired as to the disposition of the two earlier petitions, and was told that both were at an end. Our review of the files shows that the first was dismissed at the petitioner's request—in 1974—and that the second case was abated as a result of the demurrer being sustained on the ground of another action pending.

*Abatement*

The nature of pleas in abatement, particularly those dealing with the existence of prior pending litigation (see Code Civ. Proc., §§ 430.10, 430.30) has been discussed in *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 73 [42 Cal.Rptr. 473] in the following terms: "In order that a second action be abated because of the pendency of a prior action, it is elementary that the issues in the two actions be substantially the same. [Citations.] 'In determining this question, the test applied is whether a final judgment in the first action could be pleaded in bar as a former adjudication.' [Citations.] . . . 'When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action.' "

A plea in abatement is essentially a request—not that an action be terminated—but that it be continued until such time as there has been a disposition of the first action. Sustaining of a plea in abatement, raised by demurrer, does not justify a subsequent dismissal of the action without leave to amend. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 821, pp. 2429, 2430; *Lord* v. *Garland* (1946) 27 Cal.2d 840 [168 P.2d 5].) In the case at bench, leave to amend was granted and petitioner failed to amend within the time allowed. But even under these circumstances, *Lord* indicates that a dismissal of the action is not the appropriate order since there has been no showing of a determination on the merits of the pending action to constitute a definitive bar to the subsequent action upon the same cause.

*Lord* holds that " 'where the defense of another action pending is sustained (and no other special defense is sustained) an *interlocutory judgment* shall be entered in favor of the defendant pleading the same to the effect that no trial of other issues shall be had until the final determination of such other action, . . .' " (*Lord, supra,* 27 Cal.2d 840, at p. 850.) (Italics added.) The purpose of the interlocutory judgment "is to permit the trial court to retain jurisdiction over the subsequent action so that when a final determination is had in the prior pending action the court will be empowered to determine the issues in the subsequent suit." (*Lord, supra,* 27 Cal.2d 840, at p. 851.)

We view with favor the suggestion that even when a plea in abatement is valid and should be sustained, a good practice in such a

situation "would be for the trial judge to recognize the technical sufficiency of the plea in abatement, and then to. order the actions consolidated, . . ." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 961, p. 2539.) Thus, in the case at bench, the second action, which was abated by the trial court's order sustaining respondents' demurrer, could have been consolidated with the first and the third action so that these three actions—in the absence of a dismissal of any one—could have embraced all the events in the dispute between petitioner and respondents.

### The Standard of Review

On this appeal, we must view the petition from the well-established standard of review that is applicable to judgments which are granted after a demurrer has been sustained, a standard which applies whether petitioner objected to dismissal or elected to stand on his complaint. ■ "A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]" (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

We must, therefore, accept petitioner's factual allegations without weighing the difficulty of proof. Material contained in the answer filed below may not affect such acceptance.

### The Cause of Action

Petitioner's basic complaint is that he, as a student at a public university, was singled out for discriminatory and arbitrary treatment in connection with the completion of necessary requirements for receiving his graduate degree. His resort to the courts, although based upon different facts, is similar to the action pursued in *Wong* v. *Regents of University of California* (1971) 15 Cal.App.3d 823 [93 Cal.Rptr. 502], in which a medical student, by writ of mandate, sought legal intervention in his academic dispute with the medical school authorities of the University of California. ■ As in *Wong*, mandate is a proper remedy in the instant case. (See also, *Goldberg* v. *Regents of the University of California* (1967) 248 Cal.App.2d 867, 873-875 [57 Cal.Rptr. 463]; *Poschman* v. *Dumke* (1973) 31 Cal.App.3d 932 [107 Cal.Rptr. 596].) Respondents argue on appeal that the appropriate remedy was administrative mandate. (See Code Civ. Proc., § 1094.5.) This presupposes an administrative hearing record that was subject to review in the superior court.

There appears to be no such record in the instant case. Internal rulings of a public university, arrived at without requisite administrative procedures that facilitate judicial review, *e.g.,* by only the proceedings of a *student* grievance committee (the "administrative action" upon which respondents appear to rely), may be questioned by ordinary mandate, rather than the administrative mandate procedure, or by any *appropriate* extraordinary writit.

██ Petitioner has stated a cause of action, by alleging deprivation of fundamental constitutional rights, *i.e.,* discrimination and lack of equal protection guaranteed by the Fourteenth Amendment to the United States Constitution. (See *Goldberg, supra,* 248 Cal.App.2d 867, 873-875; *Eisen* v. *Regents of University of California* (1969) 269 Cal.App.2d 696, 698 [75 Cal.Rptr. 45, 37 A.L.R.3d 1300].) In *Eisen,* citing *Goldberg* with approval, it is said that "[t]he parties agree that the University's rule-making powers and its relationship with its students . . . are subject to federal constitutional guarantees . . . ." (*Eisen, supra,* 269 Cal.App.2d 696, at p. 698.)

The discussion in *Greenhill* v. *Bailey* (8th Cir. 1975) 519 F.2d 5, 7, explores the traditional rule of noninterference by judicial process with the affairs of an educational institution. Thus, the *Greenhill* court stated: "It is true that courts will ordinarily defer to the broad discretion vested in public school officials and will rarely review an educational institution's evaluation of the academic performance of its students. [Citations.] Notwithstanding this customary 'hands-off' policy, judicial intervention in school affairs regularly occurs when a state educational institution acts to deprive an individual of a significant interest in either liberty or property. [Citations.] It is well established that when such a deprivation occurs the procedural safeguards embodied in the Fourteenth Amendment are called into play, and courts will not hesitate to require that the affected individual be accorded such protection. [Citations.]"

*Greenhill* further determined that deprivation of the right to pursue a profession, such as medicine, constituted deprivation of a "significant interest," and it reversed the judgment against the student, with directions that he be given a constitutionally adequate administrative hearing.

Thus it may be seen that "[t]he so-called rule of 'judicial nonintervention in scholastic affairs' " (*Wong, supra,* 15 Cal.App.3d 823, at p. 830), enunciated in such cases as *Connelly* v. *University of Vermont and State*

*Agr. Col.* (D.Vt. 1965) 244 F.Supp. 156, 159, is subject to the rule set forth in recent California decisional law that there may be judicial intervention when arbitrary and capricious conduct on the part of the university officials has been alleged. (*Wong, supra,* 15 Cal.App.3d 823, at p. 829; *Poschman, supra,* 31 Cal.App.3d 932, at p. 938.)

Much of the case law dealing with students seeking the assistance of the courts involves students with asserted problems of academic inadequacy. That does not appear to be the problem in the case at bench. We are not unmindful, however, that various considerations, in addition to academic factors, may provide justification for a school's fashioning special requirements for an applicant for an advanced degree—requirements which are neither arbitrary nor capricious—but are founded on the university's familiarity with the student involved, and the judgment of teachers whose responsibility it is to prepare the student for professional life. ██ But what is not legally permissible is for a university or its faculty to pursue an unreasonable or a punitive course with a student for reasons that have nothing to do with his qualifications for an advanced degree. As in most cases dealing with questions of constitutional "fairness," or discrimination, the determination of what constitutes reasonable behavior on the part of the authority is a factual one.

The state universities, including Northridge, are guided by regulations contained in the California Administrative Code (title 5) as well as by the general statutes in the California Education Code (§ 22600 et seq.). One such regulation set forth in title 5 concerns "Admission to Graduate Standing," regulation No. 41011. It provides that a student will be so admitted "if he satisfactorily meets the professional, personal, scholastic, and other standards for admission to the graduate degree curriculum, including qualifying examinations, as the appropriate campus authority may prescribe. *Only those applicants who show promise of success and fitness will be admitted . . . and only those who continue to demonstrate a satisfactory level of scholastic competence and fitness shall be eligible to continue in such curricula.*" (Italics added.) This regulation was effective on July 26, 1974; we have been unable to discover the nature, if any, of the regulation which preceded it, but note that such general descriptions of an applicable standard have been found constitutionally adequate. (*Wong, supra,* 15 Cal.App.3d 823, at p. 832.)

As we have indicated, petitioner seeks to demonstrate that a constitutionally adequate standard has been applied to him in an unconstitution-

al manner through the exercise of capricious and arbitrary decision-making—for reasons which do not appear in the record before us—in an effort to deprive him of a significant interest in his chosen profession. However, we may not speculate as to his success or failure in this regard.

The judgment appealed from is reversed. The trial court is directed (1) to consolidate all pending matters involving the subject matter of this dispute and (2) to conduct an evidentiary hearing, at which time petitioner will have an opportunity to present his proof.

Kingsley, Acting P. J., and Dunn, J., concurred.