Filed 5/13/13  Vass v. BAC Home Loans Servicing CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ATILA VASS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BAC HOME LOANS SERVICING, LP et al.,<br><br>    Defendants and Respondents. | B240785<br><br>(Los Angeles County<br>Super. Ct. No. BC435028) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert L. Hess, Judge.  Affirmed.

Atila Vass, in pro. per., for Plaintiff and Appellant.

Richard D. Marks and Kyle B. Marks for Defendants and Respondents.

_____

The trial court sustained a demurrer to four of five causes of action alleged in a third amended complaint, and thereafter granted a motion for judgment on the pleadings on the remaining cause of action. We affirm.

**FACTS**

*Background*

In April 2010, plaintiff and appellant Atila Vass, represented by legal counsel, initiated his current action by filing a complaint against Michael Magness, an alleged mortgage broker/salesman, and several financial institutions. Vass's original complaint alleged two themes: (1) he had been a victim of "predatory" lending practices in the first instance and a subsequent refusal to modify loans he was repaying, and (2) he had been defrauded by Magness, working as an agent of the financial institutions, in a scheme which culminated in loans and deeds of trust related to a property on Museum Drive in Los Angeles being issued in Magness's name, instead of Vass's name. Along with his complaint, Vass filed a "'911'" ex parte application for a temporary restraining order to stop a then-pending trustee's foreclosure sale of the Museum Drive property. In April 2010, the trial court denied Vass's application for a temporary restraining order. During June 2010, at which time Vass was represented by new counsel, the trial court denied two further applications for a temporary restraining order.

By September 2010, Vass had taken control of his case away from lawyers; he thereafter litigated his claims in pro se. In October 2010, the trustee completed the foreclosure sale and transferred the Museum Drive property to the Federal National Mortgage Association (Fannie Mae) by a trustee's deed upon sale. In amended pleadings filed in November 2010 and February 2011, Vass continued to seek injunctive relief to retain the Museum Drive property, and added causes of action for reformation of promissory notes (to be in his name, with "a repayment schedule that [he] could afford"), and for specific performance of "statutory duties to offer a good faith loan modification," and similar claims. Fannie Mae filed an unlawful retainer action against Vass, and, in July 2011, obtained a judgment for possession of the property.

*The Operative Pleading*

In May 2011, Vass filed his operative third amended complaint. It alleged five causes of action, listed respectively, as follows: declaratory relief; "conspiracy to commit a tort;" violation of the Unfair Competition Law (see Bus. & Prof. Code, § 17200 et seq.); violation of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.); and "injunctive relief/specific performance."

The named defendants in the third amended complaint who are involved in the current appeal are: BAC Home Loans Servicing, LP (affiliated with Bank of America, and formerly known as Countrywide Home Loans Servicing, L.P., Inc.); ReconTrust Company, N.A. (a default and foreclosure services company also affiliated with Bank of America); and Mortgage Electronic Registration Systems, Inc. (a national database company that registers and provides information concerning loans and property records to the financial services industry). We hereafter collectively refer to these parties as defendants.[1]

Generously construed, reading all of his pleadings together, and considering judicially noticeable materials, Vass's third amended complaint alleged: In 2006, Vass found a residential property on Museum Drive in Los Angeles that he wanted to buy. He retained Magness, a friend since childhood, to arrange the loan. Vass gave $150,000 to Magness for the down payment. Magness assured Vass that with the considerable down payment, a loan could be set up without a problem. Instead of arranging for Vass to obtain loans to purchase the property, Magness pocketed some portion of Vass's down payment money. Using the remaining portion of Vass's down payment money, Magness purchased the Museum Drive property in his own name. Magness obtained a loan from

---

[1]    Vass's third amended complaint also named Magness and First Los Angeles Mortgage (Magness's employer) as defendants. The record before us on appeal does not show the outcome of Vass's claims against Magness. In December 2011, the trial court granted a motion for judgment on the pleadings filed by First Los Angeles Mortgage. In October 2012, we granted a motion to dismiss appeal filed by First Los Angeles Mortgage on the ground that any attempted appeal by Vass was untimely as to First Los Angeles Mortgage.

3

defendants in the amount of $333,600 secured by a first deed of trust recorded against the property, and another loan in the amount of $41,700 secured by a second deed of trust recorded against the property.[2]

In October 2007, Vass filed a prior lawsuit against Magness and defendants. In March 2010, the Los Angeles Superior Court entered a judgment that quieted title to the Museum Drive property's in Vass as against Magness, "subject to two (2) valid and enforceable Deeds of Trust . . . ," i.e., the first and second deeds of trust described above. In short, the judgment in the earlier lawsuit decreed that Vass owned the Museum Drive property, but there were enforceable encumbrances recorded against the property.[3] So, someone had to pay off the loans obtained by, and in, Magness's name, or the trustee under the deeds of trust could pursue foreclosure of the property.

Meanwhile, for reasons not altogether certain or congruent from the pleadings and other materials, payments on the loans secured by the deeds of trust against the Museum Drive property were not credited. Vass's pleadings at different points in times allege different factual circumstances. In his original complaint in April 2010, Vass alleged the terms of the loans were "toxic" and "predatory," he "could not sustain" the payments on the loan, and he had requested modification of the loans terms to no avail. In his operative third amended complaint filed in May 2011, Vass alleged payments had been made electronically made from his bank account until October 2008. After that point, the Bank of America related defendants had "rejected" such payments.

In late 2009, foreclosure proceedings commenced. As noted above, Vass filed his current action in April 2010 to stop the foreclosure. In May 2011, Vass filed his third amended complaint. We discuss the allegations in the third amended complaint in more detail below in addressing Vass's arguments that he alleged sufficient facts to state viable causes of action.

---

[2]    The loans were actually made by Countrywide; defendants are the successors of Countrywide.

[3]    Implicit in the earlier judgment is the court's determination that the lender was a bona fide encumbrancer for value.

4

*The Challenges to the Operative Pleading*

In June 2011, defendants filed a demurrer to the second through fifth causes of action alleged in Vass's third amended complaint. In late June, the trial court sustained the demurrer without leave to amend, and directed the defendants to prepare a judgment. In July 2011, the trial court entered "judgment" against Vass on his third amended complaint "in its entirety." Vass filed a motion for reconsideration. In September 2011, the trial court denied the motion for reconsider. At the same time, the court vacated the judgment on its own motion, noting that "the first cause of action remains."

In December 2011, defendants filed a motion for judgment on the pleadings on Vass's third amended complaint as to the remaining first cause of action for declaratory relief. In conjunction with its motion for judgment on the pleadings, defendants filed a request for judicial notice of the trustee's deed upon sale transferring the Museum Drive property to Fannie Mae. The parties argued the motion for judgment on the pleadings to the trial court in January 2012. The trial court granted the motion for judgment on the pleadings. On February 17, 2012, the court entered judgment in favor of defendants. On February 23, 2012, defendants served notice of entry of judgment.

Vass filed a timely notice of appeal from a "judgment entered on: FEB 23, 2012 [*sic*]," indicating he was appealing from a "judgment after an order granting a summary judgment motion." We construe Vass's notice of appeal to be from the judgment entered on February 17, 2012. (*Boynton v. McKales* (1956) 139 Cal.App.2d 777, 788 [a notice of appeal must be liberally construed so long as in doing so the respondent is not prejudiced and is on adequate notice of the judgment being appealed]; see also Cal. Rules of Court, rule 8.100(a)(2).)[4]

## DISCUSSION

In a series of arguments, Vass contends he alleged sufficient facts to state all five of his first causes of action. We disagree.

---

[4] In light of our construction of the notice of appeal, we summarily reject the argument advanced in respondents' brief that the appeal should be dismissed because Vass's notice of appeal does not identify any appealable judgment.

*Declaratory Relief*

In his first cause of action, Vass sought a judicial determination and declaration of the parties' "rights, duties and right to title" in the Museum Drive property, and regarding the "obligations and duties" of the parties under the loans, notes and deeds of trust with defendants. He also sought a "restraining order/injunction" preventing the defendants from attempting to sell or selling the property.

Vass's declaratory and injunctive relief cause of action in his third amended complaint could not be sustained for the simple reason that there was nothing for any court to "declare." The trustee's foreclosure sale of the Museum Drive property was completed, and a trustee's deed upon sale had issued in October 2010, and Fannie Mae had taken title, well before Vass filed his third amended complaint. Fannie Mae had evicted Vass from the property before defendants filed their motion for judgment on the pleadings. Title issues are settled as to defendants. And, with the foreclosure, the loans associated with defendants had been extinguished. We see no allegations in Vass's third amended complaint to show that, in late 2011 to early 2012, any of the defendants was claiming any interest in the property, or any rights under any property loan. For these reasons, declaratory relief would have been unavailing in the circumstances alleged in the third amended complaint. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 861, 862, pp. 276-277 [a cause of action for declaratory relief must show there is an actual, present controversy involving justiciable issues relating to the legal rights or obligations of the parties].) The issue of whether Vass suffered monetary damages from any alleged wrongdoing arising from the loans and deeds of trust associated with the Museum Drive property is another issue, but he did not allege facts showing declaratory relief was an available remedy.[5]

---

[5] Assuming Vass's third amended complaint could be construed to seek the undoing of the foreclosure sale, i.e., the cancelation of the trustee's deed, and a reconveyance to Vass, we would also find the complaint deficient. (*Debrunner v. Deutsche Bank National Trust Company* (2012) 204 Cal.App.4th 433, 440-444 [a nonjudicial foreclosure sale instituted in accordance with *Civil Code* section 2924 et seq., is presumed to be valid; a claim that the foreclosure sale was not valid must allege specific factual circumstances

***"Conspiracy to Commit a Tort"***

California does not recognize an independent cause of action for civil conspiracy. (*Okun v. Superior Court* (1981) 29 Cal.3d 442, 454.) When a plaintiff otherwise states a cognizable cause of action for a civil wrong, he or she may allege conspiracy as a basis of liability as to more than one defendant. (*Ibid*.) The elements of a civil conspiracy claim are (1) the formation and operation of the conspiracy; (2) a wrongful act in furtherance of the conspiracy; and (3) resulting damages. (See *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316.) Because conspiracy claims easily could be invoked to draw in defendants in many different circumstances, a civil conspiracy is not sufficiently alleged by "bare legal conclusions, inferences, generalities, presumptions, and conclusions." (*Nicholson v. McClatchy Newspapers* (1986) 177 Cal.App.3d 509, 521.)

Vass's third amended complaint seemingly alleges a tort in the form of a fraud or, possibly, a theft. It is rife with allegations that Magness, with the blessing of his employer, First Los Angeles Mortgage, damaged Vass by taking his $150,000 down payment money, and purchasing the Museum Drive property in Magness's own name. The loans to purchase the property were obtained in Magness's name, but Vass paid the loans for some period of time. The problem with the third amended complaint as to defendants is that Vass does not allege specific facts to show the formation of a civil conspiracy. Vass alleges defendants made loans to Magness, with "actual knowledge of [his] unlawful acts . . . ," and that all of the named "[d]efendants . . . made an agreement on how to take [Vass]'s money and property to use as their own; they reached an agreement, came up with a scheme, and as early as February 01, 2006, put the scheme in motion."

We find Vass has alleged only conclusions and generalities regarding a civil conspiracy. He has not alleged specific facts showing a conspiracy, for example, there

showing the trustee acted improperly in conducting the sale].) Vass's third amended complaint does not allege sufficient facts showing an impropriety in the conduct of the foreclosure sale itself.

are no facts alleged about who met who, when, and where, and what was said and agreed. The general allegations that all of the named defendants were acting as "agents" of all of the other named defendants in not sufficient to allege a civil conspiracy. Vass's third amended complaint is sufficient to state a cause of action against Magness for tort, but his arguments on appeal do not persuade us that the trial court erred when it sustained defendants' demurrer to his second cause of action.

### *Violation of the Unfair Competition Law*

The Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) prohibits unlawful, unfair and or fraudulent practices in the course of engaging in business activities. The Unfair Competition Law "borrows" violations of other laws, when committed in the course of a business activity, and treats them as actionable under the Unfair Competition Law. (*Farmers Ins. Exch. v. Superior Court* (1992) 2 Cal.4th 377, 383.) Accordingly, to plead a cause of action for a violation of the Unfair Competition Law, a plaintiff must allege facts showing a violation of an identified, underlying law. Vass's third amended complaint does not allege any violation of an underlying law. To the extent Vass alleges fraud occurred in connection with Magness's activities in taking title to the Museum Drive property, and in obtaining loans secured by the property, Vass has failed to allege any of the defendants made any fraudulent representations or omissions to him, or that he relied on any such representations or omissions. To the extent Vass has tried to impute Magness's wrongdoing to defendants, his pleading fails for the same reasons discussed in addressing his conspiracy claims. He has alleged only conclusions and generalities, not specific facts, stating Magness's wrongdoing was approved and or ratified by defendants.

### *Violation of the Rosenthal Fair Debt Collection Practices Act*

The purpose of the Rosenthal Fair Debt Collection Practices Act (see Civ. Code, § 1788 et seq.) "is to prohibit debt collectors from engaging in unfair and or deceptive acts for practices *in the collection of consumer debts . . . .*" (Civ. Code, § 1788.1, subd. (b), italics added.) The Act defines "consumer debt" to mean money, property or their equivalent, due or alleged to be due or owing from a person "by reason of a consumer

8

credit transaction." (Civ. Code, § 1788.2, subd. (f).) A "consumer credit transaction" under the terms of the Act means "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person *primarily for personal, family or household purposes*." (Civ. Code, § 1788.2, subd. (e), italics added.) Civil Code section 1788.17 of the Rosenthal Fair Debt Collection Practices Act requires a debt collector to comply with the federal Fair Debt Collection Practices Act (see 15 U.S.C. § 1692b et seq.).

Vass's third amended complaint essentially alleges defendants violated the Rosenthal Fair Debt Collection Practices Act by wrongly foreclosing on the first trust deed secured by the Museum Drive property. Assuming the Act applies in the context of a foreclosure under a trust deed recorded against real property to secure a real property loan (but see *Pfeifer v. Countrywide Home Loans, Inc*. (2012) 211 Cal.App.4th 1250, 1261-1264), Vass has not alleged that there was anything deceptive or unfair about the foreclosure process itself. To the extent Vass claims, the underlying loans and deed of trust were wrongful in the first instance, thus making the collection of the loans through foreclosure wrongful, his claim is barred by the doctrine of res judicata. The validity of the deeds of trust associated with defendants was litigated in Vass's first lawsuit. In his first lawsuit, Vass sought to cancel the deeds of trust on the ground that Magness fraudulently obtained the underlying loans. By the judgment entered March 1, 2010, in Vass's first litigation against defendants, the Los Angeles Superior Court ruled the deeds of trust were "valid" and "enforceable." Vass could not re-litigate the previously determined validity of the deeds of trust in his current action. (*Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 216 [the doctrine of res judicata gives conclusive effect to a former judgment in subsequent litigation involving the same controversy].)

*Injunctive Relief*

For the reasons explained above in addressing Vass's first cause of action for declaratory relief, we find he failed to state facts showing that injunctive relief could be granted.

9

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.


BIGELOW, P. J.

We concur:


RUBIN, J.


FLIER, J.

10